```
                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF KANSAS


RHONDA HEINTZELMAN,            )
o/b/o D.H.,                    )
                               )
              Plaintiff,       )
                               )
vs.                            )      Case No. 07-2238-JAR
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
              Defendant.       )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying Rhonda Heintzelman, supplemental security income (SSI) payments for her child, Daniel Heintzelman. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by

1

substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

**II.  Legal standards for child disability**

The ALJ is required to apply a three-step analysis when making a determination of whether a child is disabled.  In order to find that a child is disabled, the ALJ must determine, in this

order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets, medically equals, or functionally equals a listed impairment. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); 20 C.F.R. § 416.924(a) (2007 at 912-913).

If a child has a severe impairment which does not meet or medically equal any listing, the ALJ must decide whether the severe impairment results in limitations that functionally equal the listings. By "functionally equal the listings," the agency means that the severe impairment must be of listing level severity, *i.e.*, it must result in marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a) (2007 at 922). The six domains to be considered are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1) (2007 at 923).

A child will be considered to have a marked limitation in a domain when the impairment(s) interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. The claimant's day-to-day functioning may be seriously limited when his/her impairment(s) limits only one

activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities. Marked limitation also means a limitation that is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2) (2007 at 924).

A child will be considered to have an extreme impairment in a domain when the child's impairment(s) interferes very seriously with his/her ability to independently initiate, sustain, or complete activities. The child's day-to-day functioning may be very seriously limited when his/her impairment(s) limits only one activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities. Extreme limitation also means a limitation that is more than marked. However, extreme limitation does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3) (2007 at 924).

**III. History of case**

The minor plaintiff was born on July 15, 1999. At the time of the decision, he was a school-age child (R. at 17). At step one, the ALJ found that plaintiff is not engaged in substantial gainful activity (R. at 17). At step two, the ALJ found that plaintiff has the following severe impairments: speech disorder and pervasive developmental disorder (R. at 17). At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed

impairment (R. at 17-18). The ALJ further found at step three that plaintiff does not have an impairment that functionally equals a listed impairment (R. at 18-26). Therefore, the ALJ concluded that plaintiff is not disabled (R. at 26).

**IV. Did the ALJ err in his step two findings?**

At step two, the ALJ found that plaintiff had severe impairments of speech disorder and pervasive developmental disorder (R. at 17). Plaintiff argues that the ALJ erred by failing to find that plaintiff's anxiety disorder, adjustment disorder, ADHD, and ODD were severe impairments and by failing to consider all of plaintiff's impairments in combination (Doc. 10 at 22). The ALJ, in his decision at step two, stated the following:

> **The claimant, in addition, has also undergone multiple psychiatric/psychological evaluations which have resulted in varied diagnosis of his condition which include: atypical autism, obsessive compulsive disorder; generalized anxiety disorder, pervasive developmental disorder, attention deficit hyperactivity disorder, oppositional defiant disorder, and adjustment disorder with depressed mood (Exhibits 16F, 10F, 7F, 6F and 5F). For purposes of identifying the claimant's impairment in this decision, I have referred to this impairment as a pervasive developmental disorder.** The claimant's impairment is characterized by a combination of signs and symptoms including: generalized anxiety, emotional detachment, social isolation, ritualistic behavior, a need to follow a set routine, recurrent tics, and, at times, temper tantrums and violent outbursts. The claimant's above-noted

>    physical and mental impairments, individually
>    and in combination, cause more than minimal
>    functional limitations and, therefore,
>    constitute "severe impairments" as defined by
>    the Act (20 CFR 416.924(c)).

(R. at 17, emphasis added).

The ALJ recognized the many diagnoses, and stated that "for purposes of identifying the claimant's impairment in this decision, I have referred to this impairment as a pervasive developmental disorder" (R. at 17). Thus, the ALJ acknowledged all of the varied diagnoses, but simply listed them under one label. The ALJ further listed the various symptoms which are noted in the record. The court finds that the ALJ fully acknowledged all of the diagnoses, and did not commit error by simply listing them under one label.

Furthermore, the record does not support plaintiff's assertion that the ALJ failed to consider all of plaintiff's impairments singularly and in combination. In fact, the ALJ even stated that he considered all of the above-noted physical and mental impairments, individually and in combination as severe impairments. For these reasons, the court finds no error by the ALJ in his step two findings.

**V. Did the ALJ err in finding that plaintiff's mental impairments did not result in a marked impairment in personal functioning?**

At step three, the ALJ had to determine if plaintiff's

impairments meet or equaled a listed impairment. For purposes of child mental disorders (112.00), paragraph B(2) of these listings (112.02-112.11, which cover children ages 3 to 18) require a showing of a marked impairment in 2 of the following 4 categories: (1) cognitive/communicative function, (2) social functioning, (3) personal functioning, and (4) maintaining concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007 at 552-555).

The ALJ found that plaintiff's ability to function socially is markedly impaired, but did not find that he was markedly impaired in any of the other three categories (R. at 18).  The ALJ acknowledged plaintiff had a speech disorder, but noted that testing revealed he had age appropriate receptive and expressive language skills, that he attends school on a regular basis, and that he does well in school with no evidence of truancy or excessive absences.  The ALJ stated that the record did not show any evidence of an inability on the part of the plaintiff to care for his own personal needs on a daily basis while in school (R. at 18).

Plaintiff argued that the ALJ erred in finding that he does not have a marked impairment in personal functioning. Personal functioning for preschool children and children ages 6-12 pertains to self-care (feeding, dressing, toileting, bathing, maintaining personal hygiene, proper nutrition, sleep, health

7

habits, adhering to medication or therapy regimens, following safety precautions).  Development of self-care skills is measured in terms of the child's increasing ability to help himself/herself and to cooperate with others in taking care of these needs.  Impaired ability in this area is manifested by failure to develop such skills, failure to use them, or self-injurious actions.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00(C)(2,3) (2007 at 549).

A "marked" limitation is defined as follows:

> Where "marked" is used as a standard for measuring the degree of limitation it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00(C)(2,3) (2007 at 548).

A primary focus of plaintiff's argument is that he has a marked impairment in personal functioning because of his aggression towards family members and self-injurious actions (Doc. 10 at 16-17).  The ALJ discussed this evidence as follows:

> There is also evidence that, while the claimant allegedly suffers from nightly temper tantrums and outbursts of violence, he does not exhibit this same type of behavior while in school on a daily basis (Exhibits 7F-4 and 10F-15). He also did not exhibit

> this type of behavior while hospitalized in September of 2005 but, rather, was described as being cooperative and compliant throughout his admission (Exhibit 1OF). Several of the claimant's medical providers indicate that the severity of the claimant's outbursts, rather than being attributable to any mental impairment, can possibly be explained by situations in his life. The claimant's family has numerous stressors that appear to be aggravating his condition (Exhibits 7F-5 and 8F-3).

(R. at 19). As noted by the ALJ, a psychosocial assessment on Sept. 22, 2005, noted periodic violence against the mother and sister and hurting himself, but further noted he loves school, makes very good grades and has no violent outbursts at school (R. at 162, 165, 166). The assessment also noted that, although plaintiff has aggressive and violent tantrums at home, he does not have these tantrums at school (R. at 166).

After plaintiff was admitted to Crittenton on September 23, 2005 due to assaultive behavior and threats to his mother and sister, and self-injurious behavior (R. at 268), the reports from Crittenton indicated he does well academically and behaviorally at school (R. at 281). During his stay, he was "cooperative and compliant on the unit" and "there was no aggression" (R. at 269). Thus, the record clearly supports the ALJ's finding that plaintiff's aggressive and self-injurious behavior is limited to the home, and does not exhibit itself when plaintiff is at school or hospitalized.

The ALJ gave great weight to the state medical consultants,

Dr. Allen and Sheryl Shockey, who completed an assessment of plaintiff's functioning in October 2004 (R. at 113-118). They found that plaintiff's impairments or combination of impairments do not meet or equal a listed impairment (R. at 113). In the area of self-care, they found that his limitations were less than marked, noting that at age 5, his mother helps him with bathing, brushing and toileting (R. at 116). Furthermore, the ALJ noted that there is no evidence of plaintiff's inability to care for his own personal needs on a daily basis while in school (R. at 18).

Although there is some evidence in the record which might support a finding that plaintiff has a marked impairment in personal functioning, the court can neither reweigh the evidence nor substitute its judgment for that of the agency. White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the evidence may have supported contrary findings, the court will not displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007). The record in this case includes a state agency assessment indicating that plaintiff's ability to care for himself is less than marked. Although evidence of self-injurious behavior appears in the record, such behavior does not manifest itself outside the home,

either at school or when plaintiff has been hospitalized. Furthermore, plaintiff has provided no evidence from a medical or other source (e.g., teacher, counselor) offering an opinion that plaintiff has a marked impairment in personal functioning. The court therefore finds that substantial evidence supports the ALJ's finding that plaintiff does not have a marked impairment in personal functioning.

**VI. Did the ALJ err in his finding that plaintiff has a "marked", and not an "extreme" limitation in his ability to interact and relate with others?**

In the domain of interacting and relating with others, the ALJ should consider how well the claimant initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i)(2007 at 929). In determining whether plaintiff's impairments functionally equal a listing, the ALJ made the following findings regarding plaintiff's ability to interact and relate with others:

> <u>Based upon a combination of his impairments, I find that the claimant has marked limitation in interacting and relating with others</u>. The claimant's speech impairment limits his ability to communicate with others. He has been diagnosed with a moderate to severe articulation disorder and a mild receptive and expressive language disorder (Exhibit 12F-5). At times, as a result of his

> disfluency, the claimant experiences difficulty getting his point across. Pursuant to a mental status examination completed in September 2005, the claimant's psychiatrist indicates that "he spoke with a noticeable speech defect, but could be understood for the most part" (Exhibit 7F-5). The claimant's mother states that, as a result of his speech disorder, the claimant is often teased by other children and has few friends. The claimant's medical providers indicate that he is shy and somewhat timid and that his articulation is at times poor (Exhibit 8F-3). His pre-school teacher notes that he does not volunteer to speak in class (Exhibit 3F). The record also reveals evidence that the claimant has significant difficulty interacting with family members. He is limited in his ability to express his emotions and becomes easily agitated when he is overly stimulated and/or forced to divert from his standard routine or ritualistic activity. While the evidence reveals that he is able to function at school on a daily basis, the claimant experiences nightly temper tantrums which, at times, can escalate into a violent rage (Exhibits l6F and Exhibit 10F).

(R. at 23, emphasis in original).

The state agency assessment found that plaintiff had a marked limitation in this domain (R. at 115). The assessment stated the following regarding its finding of a marked impairment in this domain:

> CMH speech and language evaluation revealed a severe fluency disorder and a moderate articulation disorder. The parent reports that the claimant is not understood by anyone except his mother, grandmother, and sister. He chooses not to talk to most people because of his fluency and articulation problems, according to his mother. He is reportedly teased by peers

>           about his speech. The CMH evaluation report
>           states that his speech is moderately
>           unintelligible in an unknown context.
>           Preschool teacher reports that claimant is
>           more than 50% intelligible. She adds that he
>           does not volunteer to speak in the classroom
>           often, but will do so occasionally. She
>           reports that recently the stuttering problem
>           has been less severe. She describes him as
>           persistent to finish his utterances. He does
>           play with peers, but is content to play
>           by himself. The teacher has not observed any
>           peer teasing.

(R. at 115).  The ALJ gave substantial weight to the assessment, finding that the opinions of Dr. Allen and Ms. Shockey to be consistent with the objective medical evidence of record (R. at 19).  In addition, plaintiff's preschool teacher reported in October 2004 that plaintiff "is a very sweet boy who plays well with peers and tries very hard in the preschool setting" (R. at 112).  The teacher further stated that plaintiff plays with a small group of children in his classroom, and also is content to play by himself (R. at 112).  Dr. Graf stated on October 4, 2005, that plaintiff is making forward progress, and that he anticipates a healthy and productive first grade year.  Dr. Graf stated that plaintiff's language skills and his socialization are improving (R. at 170).

Again, although there is some evidence in the record which might support a finding that plaintiff has an extreme limitation in the domain of interacting and relating with others, the court can neither reweigh the evidence nor substitute its judgment for

that of the agency. The state agency assessment found that plaintiff's limitation in this domain was marked. No medical or other source opined that plaintiff had an extreme limitation in this domain. In fact, Dr. Graf found that plaintiff's language skills and socialization were improving. Plaintiff's preschool teacher found that he was a very sweet boy who plays well with peers and tries very hard in the preschool setting. Although plaintiff has demonstrated violent and aggressive behavior at home, he has not demonstrated such behavior at school or when hospitalized. Therefore, the court finds that substantial evidence supports the ALJ's finding that plaintiff has a marked, but not an extreme limitation, in the domain of interacting and relating with others.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 4, 2008.

                s/John Thomas Reid
                JOHN THOMAS REID
                United States Magistrate Judge